UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Lisa M. Mills

     v.                             Civil No. 10-cv-279-JL
                                          Opinion No. 2011 DNH 097
Michael J. Astrue, Commissioner,
Social Security Administration

**MEMORANDUM ORDER**

Lisa M. Mills has appealed the Social Security Administration's denial of her application for Social Security Disability Insurance benefits beginning in 2002. An administrative law judge at the SSA ("ALJ") ruled that Mills did not become disabled until nearly six years later, on May 20, 2008. The ALJ ruled that, while Mills was suffering from severe impairments as of 2002, see 20 C.F.R. § 404.1520(c), those impairments did not meet or equal any "listed impairment," see id. § 404.1520(d), so the disability determination rested on her residual functional capacity, see id. § 404.1520(e). He went on to rule that until May 20, 2008, Mills's residual functional capacity, age, education, and work experience would have allowed her to perform jobs that existed in significant numbers in the national economy, see id. §§ 404.1520(g), 404.1560(c).

The SSA's Decision Review Board ("DRB") affirmed the ruling, see id. § 405.440(c)(1), so that affirmance is the final decision on Mills's claim, see id. § 405.440(b)(1), which she appealed to

this court.  Mills has moved for an order reversing the decision,
see L.R. 9.1(b)(1), arguing that it reflects an "arbitrary"
determination of the onset date of her disability because:

> (1) the ALJ failed to consider Mills's obesity, or the
> combined effect of her impairments, in ruling that she
> did not have a listed impairment since 2002;
>
> (2) the ALJ selected the onset date of Mills's
> disability without calling on the services of a medical
> advisor; and
>
> (3) the ALJ decided that Mills could have performed
> jobs existing in significant numbers in the national
> economy prior to 2008 without any testimony from a
> vocational expert.

The Commissioner of the SSA has cross-moved for an order
affirming the DRB's decision, see L.R. 9.1(d), arguing that it
does not suffer from any of these deficiencies.  This court has
jurisdiction under 42 U.S.C. § 405(g) (Social Security).

After reviewing the administrative record, the parties'
joint statement of material facts, and their respective
memoranda, this court grants the Commissioner's motion to affirm
the ALJ's decision and denies Mills's motion to reverse it.  The
ALJ considered Mills's obesity and the combined effect of her
impairments, chiefly hip and knee pain, in deciding that she did
not have a listed impairment beginning in 2002, and substantial
evidence supports that finding.  Because Mills's medical records
unambiguously establish that she was not suffering from disabling
pain as of 2002, the ALJ did not need to call on the services of

a medical advisor in selecting the onset date of her disability. Finally, because the ALJ supportably found that prior to May 20, 2008, Mills did not suffer from any nonexertional limitations that significantly affected the work available to her, he did not need to call on a vocational expert either.

## I. <u>**Applicable legal standard**</u>

"Judicial review of a Social Security claim is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Social Security, 211 F.3d 652, 655 (1st Cir. 2000) (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)). If the ALJ's factual findings were supported by "substantial evidence," they are "conclusive," even if the court disagrees with the ALJ, and even if other evidence supports a contrary conclusion. 42 U.S.C. § 405(g); <u>see also</u>, e.g., Nguyen, 172 F.3d at 35. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Becker v. Sec'y of Health & Human Servs., 895 F.2d 34, 36 (1st Cir. 1990) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

That standard is not, however, "merely [a] rubber stamp [of] the ALJ's decision." Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002) (quotation and bracketing omitted). If the ALJ's decision was based on "a legal or factual error," or otherwise

unsupported by substantial evidence, then it must be reversed and remanded under § 405(g).  Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996); see also, e.g., Johnson v. Astrue, 597 F.3d 409, 411 (1st Cir. 2009); Nguyen, 172 F.3d at 35 (noting that an ALJ's findings are not conclusive where they are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts").

A five-step process is used to evaluate an application for Social Security disability benefits.  See 20 C.F.R. § 404.1520(a)(4).  The applicant bears the burden, through the first four steps, of proving that she is disabled, i.e., that (1) she is not engaged in substantial gainful activity; (2) she has a severe impairment; (3) the impairment meets or equals a specific impairment listed in SSA regulations; and, if not, (4) the impairment prevents her from performing her previous relevant work.  Id.  At step five, the burden shifts to the Commissioner to prove that the applicant has the residual functional capacity to perform other jobs existing in significant numbers in the national economy.  Id. § 404.1560(c)(2); see also, e.g., Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

## II. Background

## A. Relevant medical history

Mills received a total right hip replacement in 1990, when she was 18 years old. Since the age of 8, she had been suffering from arthritis in the hip, which she recalls having developed as the result of a staph infection that also stunted the growth in her right leg. To equalize the length of her legs, Mills had surgery on her left leg at the age of 10. In the years prior to the 1990 hip replacement procedure, Mills had been experiencing pain in her right hip and had been using crutches while walking. She had also become obese.

Between 1991 and February 2002, Mills worked as a cashier at a gas station and a production associate at a mailing company. She has not worked since.

In early June 2002, Mills saw an orthopedist, Dr. Luis Candito. Mills reported that about two years prior she had started feeling pain and discomfort in her right hip and that about one year prior she had started experienced a grinding sensation and radiating pain there, as well as a worsened limp. Noting some problems with Mills's replacement hip, Candito recommended another surgery and referred her to an orthopedic surgeon, Dr. John Lynn. Lynn concluded that the replacement hip

had failed, possibly due to infection, and would need to be
replaced.  Mills underwent that procedure in July 2008.

In August and September 2002, Mills had appointments with
Lynn following up her surgery, and reported "not much" or no pain
in her right hip, though she did report some numbness along the
side of her right leg from her thigh to her big toe.  Lynn
advised Mills that by October 2002 she could "be 100%
weightbearing [on her right hip] as long as there is no pain."
In a November 2002 visit with Lynn, Mills complained of numbness
in her right leg down to her ankle, as well as pain in her left
knee and back.

Mills did not see Lynn or any other doctor again until May
2003, when she reported that the numbness had been largely
resolved, though some "discomfort" in her back and lower leg
persisted.  She also reported that she had been walking for
exercise.  Lynn advised Mills to lose weight:  she had gained 40
pounds since her last visit and, even at that point, she was
already "massively obese," according to Lynn.  The next--and
last--time Lynn saw Mills was nearly two years later, in April
2005, but he did not enter any note of the visit into her chart.

Mills did not seek medical attention for her hip, knee, or
back again until March 2007, when she saw another orthopedist,
Dr. Sean Frost.  She reported pain in several areas on her lower
right side, including her lower back, her hip, and her leg

through her knee, which "can be as bad as 9 out of 10 on a daily basis and activities such as walking exacerbate it."  Frost diagnosed Mills with bursitis in her hip joint and recommended physical therapy and weight loss.

Mills saw Frost again in October 2007, complaining of "intermittent [left] knee pain over the years" that had become "significant" during the prior three weeks.  Mills also reported "difficulty navigating stairs" and "a poor walking tolerance." Frost observed that the range of motion in Mills's left knee was limited and accompanied by "a dramatic presentation of anterior pain."  After an MRI, Frost diagnosed Mills with an irritation of the cartilage in her left knee, caused by the misalignment of her kneecap relative to her thigh bone.  In Frost's opinion, this misalignment was itself caused by the failure of her thigh bone to develop properly following the surgery she underwent at age 10 to equalize her leg lengths.

Frost ordered a course of injections of synthetic joint lubricant into the knee, which were administered over the next few months, as well as a brace and physical therapy.  In April 2008, however, Mills returned to see Frost, reporting that she had fallen on the stairs several months ago and that "her knee pain is as bad now as it was a month ago," i.e., 5 or 6 on a scale of 10.  Mills also complained of "great difficulty with stairs, difficulty with start up pain, [and] poor walking

tolerance in part due to her right hip and left knee."  Because the non-surgical interventions had failed to relieve these symptoms, Frost offered to perform an experimental procedure to try to realign Mills's left kneecap.

Mills underwent the surgery on May 20, 2008.  In the months that followed, however, she continued to complain of pain in her visits with Frost, who observed that the procedure had not succeeded in repositioning her kneecap.  So Mills underwent surgery again in February 2009, when Frost removed the kneecap. Even months after that procedure, however, Mills continued to describe pain and a "clunking" sensation in her left knee, and used a cane for walking.

## B.    The ALJ's decision

In the meantime, in April 2008, Mills applied for Social Security disability insurance and supplemental income benefits, claiming that she had become disabled on July 2, 2002.  The SSA denied Mills's claim, explaining that she would be able to perform sedentary work within twelve months of her surgery and therefore did not have a "disability" under the Social Security Act.  See 42 U.S.C. § 423(d)(1)(A).  After retaining counsel, Mills requested a hearing on her claim before an ALJ, which took place in January 2010.

Mills was the only witness to testify at the hearing.  She recalled that she had seen Lynn for pain in her hip in April 2005 (the visit for which he was unable to make a note in her chart) and that he had given her a cortisone injection.  Mills also recalled that following her second hip replacement in 2002 she walked with a "major limp," using a cane or nearby wall surfaces to steady herself.

Following the hearing, the ALJ issued a partially favorable decision on Mills's claim.  The ALJ concluded that Mills "was not disabled prior to May 20, 2008"--the date of her experimental knee surgery--"but became disabled on that date and has continued to be disabled through" February 4, 2010.  The ALJ ruled that since July 2, 2002, Mills had not engaged in substantial gainful activity, see 20 C.F.R. § 404.1571, and suffered from severe impairments, see id. § 404.1520(c), including post-surgical complications from her hip and knee surgeries, as well as obesity.  But the ALJ also ruled that since July 2, 2002, Mills had not suffered "an impairment or combination of impairments that met or medically equaled one of the listed impairments," see id. § 404.1520(d) (citing 20 C.F.R. Subp. B, App. 1), including "major dysfunction of a joint," which "cannot be met because [she] does not have an inability . . . to ambulate effectively."

The ALJ went on to rule that prior to May 20, 2008, Mills had the RFC to perform less than the full range of sedentary

9

work.  See id. § 404.1567(a).  The ALJ reasoned that while Mills
had medically determinable impairments that could reasonably be
expected to cause her claimed symptoms, their intensity,
persistence, and limiting effects did not prevent her from doing
less than the full range of sedentary work prior to May 20, 2008.
The ALJ noted that Mills had testified at the hearing to "sharp
and constant pain" in her lower back since 1990, and "a lot of
pain and discomfort," including "increased knee pain," since her
second hip replacement surgery in 2002.  But the ALJ found that
these statements were not credible insofar as they described
Mills's symptoms prior to May 20, 2008 because "the records
indicate that [she] made almost no complaints about her second
hip surgery until 2007, almost five years later.  Such lack of
treatment or complaints is wholly inconsistent with a finding of
total disability."  The ALJ also ruled, though, that Mills had
been unable to perform her past relevant work as of 2002.  See
id. § 404.1520(f).

Finally, the ALJ concluded that prior to May 20, 2008 jobs
existed in significant numbers in the national economy that Mills
could have performed, considering her age, education, work
experience, and residual functional capacity.  See id.
§ 404.1560(c).  Specifically, the ALJ ruled that, although Mills
could perform less than the full range of sedentary work at that
time, her "ability to perform all or substantially all of the

10

requirements of this level of work was minimally impeded by additional limitations" which "had little or no effect on the occupational base of unskilled sedentary work."  See id. Subp. P, App. 2, § 201.  But the ALJ also concluded that since May 20, 2008 "there are no jobs that exist in the national economy that [Mills] can perform."  In making this distinction, the ALJ reasoned that Mills's condition began to worsen on the day of her first knee surgery, so she could no longer "sustain the demands of employment on a full-time basis due to severe knee pain and the need to be off her feet" as of May 20, 2008.

As noted at the outset, the DRB reviewed this decision.  See id. § 405.440(a).  During the review process, Mills amended her claim to allege that she had become disabled on September 30, 2002 rather than July 2, 2002.  The DRB affirmed the ALJ's decision, despite Mills's contentions that as of September 30, 2002 she had a listed impairment, that the ALJ failed to account for the effects of Mills's obesity, and that the ALJ failed to hear testimony from a vocational expert.  This appeal followed.

III.  **Analysis**

As Mills acknowledges, this appeal is limited to the ALJ's determination of the "onset date" of her disability.  Selecting the onset date to be May 20, 2008 rather than September 30, 2002

11

did not affect Mills's eligibility for Supplemental Security
Income:  Mills did not apply for social security until April
2008, and Supplemental Security Income cannot be paid for months
preceding the claimant's application, see 42 U.S.C. § 1382(c)(7),
and cannot be awarded retroactively, see Social Security Ruling
83-20, Program Policy Statement: Titles II and XVI: Onset of
Disability (PPS-100), 1983 WL 31249 (S.S.A. 1983) ("SSR 83-20").
But the selection of May 20, 2008 and not September 30, 2002 as
Mills's onset date did affect her eligibility for disability
insurance.  For purposes of that benefit, a person "cannot be
found disabled under the Act unless insured status is also met at
a time when the evidence establishes the presence of a disabling
condition." Id. at *2 (parenthetical omitted).  Here, as the ALJ
observed, and Mills acknowledges, her insured status ceased on
September 30, 2002 (as a result of her earnings history), so she
cannot receive disability insurance benefits unless she was
disabled by then.

On appeal to this court, Mills essentially repeats the
arguments she made to the DRB, with one addition.  She argues
that the ALJ erred in deciding that she was not disabled as of
2002 because (1) he failed to consider Mills's obesity or the
combined effect of her impairments in ruling that she did not
have a listed impairment, (2) the ALJ ruled that Mills was not
disabled as of 2002 without calling on a medical advisor, and

(3) the ALJ decided that prior to May 20, 2008 Mills could have performed jobs existing in significant numbers in the national economy without any testimony from a vocational expert.  For the reasons explained below, the court rejects these arguments, and affirms the ALJ's ruling.


**A.    The ALJ did not err in finding that Mills was free of any listed impairment before May 20, 2008**

Mills argues that since 2002 she has been suffering from an impairment or combination of impairments that meets or equals one of the listed impairments, rendering her disabled without regard to her age, education, or work experience.  See 20 C.F.R. § 404.1520(d).  The listing of impairments "describe[s] conditions that are generally considered severe enough to prevent a person from doing any gainful activity." Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990).  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Furthermore, "the evidence must show that [the] impairment(s) has lasted or can be expected to last for a period of at least 12 months."[1] 20 C.F.R. § 404.1525(c)(4).

---

[1]This is the rule where, as here, the listing itself does not specify a different duration. 20 C.F.R. § 404.1525(c)(4).

Mills argues that by September 30, 2002, at the latest, her condition equaled the listing for "major dysfunction of a joint." Id. Subp. B, App. 1, § 1.02.  That listing requires, inter alia, "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively."  Id. § 1.02(A). The ALJ found that Mills's condition did not meet or equal § 1.02(A) because she had the ability to ambulate effectively.

The ALJ's finding was supported by substantial evidence, most notably the records of Mills's visits with Lynn following her second hip replacement surgery in July 2002.  By September 2002, Mills reported no pain in her right hip, and was told that as long as she remained pain-free there she could start using the hip normally within weeks.  By May 2003, she reported that she had been walking for exercise.  So there was substantial evidence that on her claimed onset date of September 30, 2002, Mills did not have an inability to ambulate effectively (not that lasted anywhere near the required 12 months, at least).  Mills does not directly dispute this point.[2]  Instead, she argues that the ALJ's

---

[2]Mills points to notes of her visits with Lynn in May 2003, and with a psychologist in August 2003, stating that she walked with a limp at that time.  (Mills also testified to that effect at the hearing before the ALJ.)  But, even putting aside that walking with a limp does not itself equal the inability to ambulate effectively, see 20 C.F.R. Subp. B, App. 1, §§ 1.00(B)(2)(b)(1)-(2), the medical records just discussed provided substantial evidence for the ALJ's decision that Mills did not have an inability to ambulate effectively as of 2002.

14

finding was erroneous because it failed to account for the combined effect of her hip problems with either her obesity or her knee problems.  It is true that "when determining whether an individual with obesity has a listing-level impairment . . . , adjudicators must consider any additional and cumulative effects of obesity."  20 C.F.R. Subp. B, App. 1, § 1.00(Q); see also Social Security Ruling 02-1p, Policy Interpretation Ruling: Titles II and XVI: Evaluation of Obesity, 1992-2010 Soc. Sec. Rep. Serv. 250 ("SSR 02-1p").  It is likewise true that "a combination of impairments, no one of which meets a listing" may equal a listing "[i]f the findings related to the impairments are at least of equal medical significance to those of a listed impairment."  20 C.F.R. § 404.1526(b)(3).

Here, the ALJ specifically found that Mills's hip condition, knee condition, and obesity amounted to severe impairments as of 2002, but that "she has not had an impairment or combination of impairments that met or medically equaled one of the listed impairments."  That suffices to show that, in accordance with SSR 02-1p and § 404.1526(b)(3), the ALJ considered the effects of Mills's obesity and knee problems in deciding that she did not have a listed impairment.  See Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) (rejecting the argument that ALJ failed to consider impairments in combination where he specifically stated he had); Lalime v. Astrue, 2009 DNH 053, 21011 (Barbadoro, J.),

(rejecting the argument that ALJ failed to account for the claimaint's obesity where it was "clear that he considered that condition when evaluating her claim").

Moreover, Mills does not explain how her obesity or knee problems affected her ability to ambulate in September 2002.  As just discussed, Mills's contemporaneous medical records show that closely following her second hip replacement surgery in June of that year she was able to walk despite her obesity and any problems with her knees (indeed, the records do not indicate that she even complained about knee pain in that period).  So there was substantial evidence for the ALJ's decision that the impairments she was suffering as of 2002--hip problems, knee problems, and obesity--did not meet or equal the listing for "major dysfunction of a joint" because, again, she was able to ambulate effectively in that time frame.  See Sienkiewicz v. Barnhart, 409 F.3d 798, 802-03 (7th Cir. 2005) (upholding ALJ's finding that the claimant did not have a listed musculoskeletal condition where, even with her obesity, she walked with only a slight limp); Brown ex rel. Williams v. Barnhart, 388 F.3d 1150, 1152-53 (8th Cir. 2004) (similar).

Rather than trying to show an inability to ambulate (and, therefore, the existence of a listed disability) as of her claimed onset date, Mills points to the medical records of her lifelong knee problems, leading up to her experimental knee

16

surgery in 2008.  Yet Mills did not start seeking medical attention for knee pain until October 2007 and, even then, she claimed only that it had been "intermittent . . . over the years" and "significant" just recently.  In rejecting Mills's claim and her supporting testimony at the hearing that she had become disabled by knee pain in 2002, the ALJ relied specifically on the fact that Mills had not sought treatment for that condition until more than five years later.  The ALJ acted properly in doing so, see, e.g., Dupuis v. Sec'y of HHS, 869 F.2d 622, 624 (1st Cir. 1989); Perez Torres v. Sec'y of HHS, 890 F.2d 1251, 1255 (1st Cir. 1989), and in finding that Mills did not suffer from a listed impairment as of her claimed onset date.

**B.   The ALJ did not err in selecting the onset date of Mills's disability without calling on a medical advisor**

Mills also argues that the ALJ erred by failing to call on the services of a medical advisor to determine the onset date of her disability.  This argument is based on a Social Security Ruling, SSR 83-20, which provides, in relevant part, that

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination . . . . How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the [ALJ] should call on the

17

services of a medical advisor when onset must be
inferred.

1983 WL 31249, at *3.

As this court has observed, this part of SSR 83-20
"ordinarily requires an ALJ to consult a medical advisor when the
ALJ has made a finding of disability but the onset of the
disability must be inferred from ambiguous evidence." Ryan v.
Astrue, 2008 DNH 148, 17 (Barbadoro, J.) (citing cases). But, as
this observation suggests, "a medical advisor need be called only
if the medical evidence of onset is ambiguous." Ried v. Chater,
71 F.3d 372, 374 (10th Cir. 1995); see also, e.g., Grebenick v.
Chater, 121 F.3d 1193, 1200-01 (8th Cir. 1997); Bailey v. Chater,
68 F.3d 75, 79 (4th Cir. 1995); 3 Social Security Law & Practice
§ 39:6 (2011); cf. May v. SSA Comm'r, 125 F.3d 841 (table), 1997
WL 616196, at *1 (1st Cir. Oct. 7, 1997) (ruling that where "the
evidence regarding the date on which claimant's mental impairment
became severe [was] ambiguous . . . , [SSR 83-20] required the
ALJ to consult a medical advisor").

Here, as already discussed, the medical evidence of the
onset date of Mills's disability was not ambiguous. The ALJ
found that Mills was disabled as of the date of her experimental
knee surgery, May 20, 2008, because by that point "she could not
sustain the demands of employment on a full-time basis due to
severe knee pain and the need to be off her feet." Again,

18

Mills's medical records reflect no complaints of severe knee
pain--or, indeed, any pain in her knee at all--between November
2002 and March 2007.  And even her November 2002 complaint was
isolated in the sense that Mills had not described knee pain in
visits to her doctors earlier that year or, importantly, in her
subsequent visit in May 2003.

As one court has observed, if "no legitimate basis can
support an inference of disability" as of the claimed onset date,
then "no medical advisor is necessary" under SSR 83-20.  Mason v.
Apfel, 2 F. Supp. 2d 142, 149 (D. Mass. 1998).  This case fits
within that category.  Mills's medical records are simply not
ambiguous as to whether she was disabled from knee pain (or, as
discussed supra, any other condition either alone or in
combination with knee pain) as of September 30, 2002, as she
claims.  Accordingly, the ALJ did not err by failing to call on
the services of a medical advisor to determine the onset date of
Mills's disability.  See Grebenick, 121 F.3d at 1201 (ruling that
where medical records indicated that claimant's symptoms "had not
yet reached the disabling level" within the two years following
her claimed onset date, "no ambiguity exist[ed] as to whether she
was disabled [then] and the ALJ did not err in failing to employ
the assistance of a medical advisor"); Biron v. Astrue, No. 09-
40084, 2010 WL 3221950, at *7 (D. Mass. Aug. 13, 2010) (ruling
that SSR 83-20 did not require a medical advisor where "there is

19

no medical evidence that [claimant] was disabled" as of her
claimed onset date).

### C.   The ALJ did not err in finding that prior to May 20, 2008, Mills could have performed jobs existing in significant numbers in the national economy

Finally, Mills argues that the ALJ erred in finding, without
any testimony from a vocational expert, that she could have
performed jobs existing in significant numbers in the national
economy prior to May 20, 2008.  As noted supra, the Commissioner
bears the burden of proving that a claimant has the residual
functional capacity to perform other jobs existing in significant
numbers in the national economy.   See 20 C.F.R. § 404.1560(c)(2).
"If the applicant's limitations are exclusively exertional, then
the Commissioner can meet [this] burden through the use of a
chart contained in the Social Security regulations," known as the
"Medical-Vocational Guidelines" or "the Grid."  Seavey v.
Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 404,
Subp. P, App. 2).  But "[i]f the occupational base is
significantly limited by a nonexertional impairment, the
[Commissioner] may not rely on the Grid to carry the burden."
Heggarty, 947 F.2d at 996 (emphasis added).  In that case,
"[u]sually, testimony of a vocational expert is required."  Id.

Here, the ALJ relied on the Grid and not on any testimony
from a vocational expert to find that prior to May 20, 2008, jobs
existed in significant numbers in the national economy that Mills
could have performed.  Mills argues this was improper in light of
her "many non-exertional limitations," but she does not specify
what those limitations are.  Instead, she restates the conclusion
of a psychologist who examined her in August 2003 that she "is
not functioning up to her potential due to a deficit in working
memory, possibly related to chronic, untreated Attention
Deficit/Hyperactivity Disorder and a specific learning disability
in mathematics" (parenthetical omitted).

"In the disability programs, a nonexertional impairment is
one which is medically determinable and causes a nonexertional
limitation of function or an environmental restriction." Social
Security Ruling 83-14, Program Policy Statement: Titles II and
XVI: Capability to Do Other Work--The Medical-Vocational Rules as
a Framework for Evaluating a Combination of Exertional and
Nonexertional Impairments, 1983 WL 31254, at *1.  Here, based on
this rule, Mills's claimed learning disability did not amount to
a nonexertional limitation, because the ALJ specifically found
that it was "not medically determinable."  Mills does not
question this finding, which was supported by substantial
evidence (as the ALJ pointed out, the disorder was not "formally
diagnosed," but merely hypothesized as the "possible" source of

21

Mills's "not functioning up to her potential").  In the absence
of a nonexertional impairment, the ALJ was free to rely solely on
the Grid at step 5.  See Frustaglia v. Sec'y of HHS, 829 F.2d
192, 195 (1st Cir. 1987).

In any event, the ALJ also specifically found that Mills's
deficient written arithmetic skills had not "caused more than
minimal limitations in [her] ability to perform mental work
activities," that "the medical evidence simply does not support
her allegations" of trouble with memory and concentration, and
that Mills had "reported no difficulties with memory,
concentration, understanding, or following instructions" in her
application for Social Security benefits.  These findings are
supported by substantial evidence and, again, Mills does not
question them.  Based on these findings, the ALJ went on to
conclude that prior to May 20, 2008, Mills's "additional
limitations had little or no effect on the base of unskilled
sedentary work."  As the court of appeals has instructed, "should
a nonexertional limitation be found to impose no significant
restriction on the range of work a claimant is exertionally able
to perform, reliance on the Grid remains appropriate."  Ortiz v.
Sec'y of HHS, 890 F.2d 520, 524 (1st Cir. 1989).  That was the
case here, in light of the ALJ's supportable finding that prior
to May 20, 2008, Mills's nonexertional limitations (if in fact

she had any) did not significantly restrict the range of work she
could do.  See Frustaglia, 829 F.2d at 195.


## IV.  <u>Conclusion</u>

Based on the foregoing, Mills's motion to affirm the
Commissioner's decision[3] is DENIED, and the Commissioner's motion
to affirm that decision[4] is GRANTED.  See 42 U.S.C. § 405(g).
The clerk shall enter judgment accordingly and close the case.


**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  June 15, 2011

cc:  Janine Gawryl, Esq.
     Robert J. Rabuck, AUSA

---

[3]Document no. 9.

[4]Document no. 11.